UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA,                   :
                                            :                    DECISION AND ORDER
                                            :                    12-CR-186 (WFK)
         -against-                          :
                                            :
                                            :
GARY FAMA and                               :
JACK MANNINO,                               :
                                            :
              Defendants.                   :
                                            :
-----------------------------------------------------------X

By superseding indictment filed June 26, 2012, Defendants Gary Fama ("Fama") and Jack Mannino ("Mannino") are charged with Bank Robbery in violation of 18 U.S.C. §§ 2113(a) and 2113(d), and using and carrying a firearm in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Fama moves *in limine* for this Court (1) to find the photographic array shown to a government eyewitness (the "Eyewitness") unduly suggestive; and (2) to permit him to be seated in the audience while the Eyewitness testifies. For the reasons stated below, the motion is denied.

## BACKGROUND

At 5:55 p.m. on December 29, 2011, two white males entered the Capital One Bank at 5120 New Utrecht Avenue in Brooklyn, New York (the "Bank"). The men ordered everyone in the Bank to the ground and forbade anyone to look at them. One of the men was armed with a handgun. The second man jumped over the counter and took approximately $5,658.00 from the tellers' drawers. The two men then fled the Bank. Compl., at ¶¶ 2–4.

A bank employee triggered the Bank's silent alarm during the robbery. Law enforcement officers arrived at the scene approximately two minutes later and found an abandoned black 2007

1

Lexus ES 350 registered to Mannino one block from the Bank on 72nd Street near the intersection of 17th Avenue in Brooklyn. The Eyewitness allegedly observed the Lexus reverse down 72nd Street at a high rate of speed and stop near the corner of 72nd Street. The Eyewitness then allegedly observed two white males exit the Lexus and flee eastbound on 17th Avenue. *Id.* The Eyewitness described the white male who exited from the passenger side of the vehicle as balding, overweight, and wearing eyeglasses. Gov't's Opp'n, at 2.

On January 9, 2012 the Eyewitness was shown a photographic array containing a photograph of Fama. The Eyewitness identified Fama as the white male who exited the passenger side of the Lexus on December 29, 2011. Compl., at ¶ 4.

## ANALYSIS

### I. The Photographic Array

Fama contends the photographic array was impermissibly suggestive in its construction and its presentation to the Eyewitness. Fama provides no basis for his contention.

"A defendant has a due process right not to be the object of suggestive police identification procedures that create 'a very substantial likelihood of irreparable misidentification.'" *United States v. Thai*, 29 F.3d 785, 807 (2d Cir. 1994) (quoting *United States v. Concepcion*, 983 F.2d 369, 377 (2d Cir. 1992)). The right extends to photographic arrays. *Id.* "The fairness of a photographic array depends on a number of factors, including the size of the array, the manner of presentation by the officers, and the array's contents." *Concepcion*, 983 F.2d at 377. If the presentation of the photographic array is not inherently prejudicial, the "principal question is whether the picture of the accused, matching descriptions given by the witness, so stood out from all the other photographs as to 'suggest to an identifying

witness that [that] person was more likely to be the culprit.'" *Jarrett v. Headley*, 802 F.2d 34, 41 (2d Cir. 1986) (quoting *United States v. Archibald*, 734 F.2d 938, 940 (2d Cir. 1984)).

The photographic array was not presented to the Eyewitness in a suggestive manner. Rather, the Eyewitness was shown the array and asked if either of the people seen exiting the Lexus was depicted. Gov't's Opp'n, at 2; Compl., at ¶ 4. The Eyewitness was told there was no requirement to identify anyone at all. Gov't's Opp'n, at 2.

The array itself is not unduly suggestive. It contains six photographs, a number the Second Circuit has upheld as sufficient to protect criminal defendants' due process rights. *United States v. Bennett*, 409 F.2d 888, 898–900 (2d Cir. 1969); *United States v. Marrero*, 705 F.2d 652, 655 n.5 (2d Cir. 1983); *Archibald*, 734 F.2d at 940–41. Each photograph depicts a balding, overweight, white man wearing eyeglasses. Each man is of approximately the same age and complexion. Each man is presented against an identical backdrop. The men depicted are not identical, but the differences between them do not single out Fama or suggest he was the culprit. This Court holds the photographic array was not unduly suggestive.

## II. Special Procedures for In-Court Identification

Fama seeks to be seated in the audience if and when the Eyewitness is asked to make an in-court identification. Special procedures for in-court identification are only necessary where: "(1) identification is a contested issue; (2) the defendant has moved in a timely manner prior to trial for a lineup; and (3) despite the defense request, the witness has not had an opportunity to view a fair out-of-court lineup prior to his trial testimony or ruling on the fairness of the out-of-court lineup has been reserved." *United States v. Archibald*, 756 F.2d 223, 223 (2d Cir. 1984). "Generally if identification procedures used prior to trial were not unduly suggestive, questions

as to the reliability of a proposed in-court identification affect only the identification's weight, not its admissibility." *United States v. Matthews*, 20 F.3d 538, 547 (2d Cir. 1994).

Fama is not entitled to a special procedure for in-court identification. Identification is a contested issue. However, Fama has not moved for a lineup. Furthermore, while there is no indication that the Eyewitness has had an opportunity to view an out-of-court lineup, the Eyewitness has viewed a fair photographic array. The Second Circuit has consistently affirmed the use of photographic arrays, stating an "unbroken line of our decisions . . . permits the use of a non-suggestive [photographic] array for identification purposes[.]" *United States v. Anglin*, 169 F.3d 154, 161 (2d Cir. 1999). The Court stated in *Anglin* that the due process rights of the defendant there were not infringed upon "even if we assume that [the witness] based her in-court identification solely on her prior out-of-court [photographic] array identifications." *Id.* The issue is not whether a lineup might have conceivably been more reliable than a photographic array, but whether the array shown to the Eyewitness preserved the due process rights of Fama. This Court holds it has. The motion *in limine* by Fama is denied.

**SO ORDERED**

Dated: Brooklyn, New York
      July 5, 2012

s/WFK

HON. WILLIAM F. KUNTZ, II
United States District Judge