UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
UNITED STATES OF AMERICA,  :
                                                          :       DECISION AND ORDER
                                                          :       12-CR-186 (WFK)
        -against-                                    :
                                                          :
                                                          :
GARY FAMA,                                       :
                                                          :
                Defendant.                         :
                                                          :
------------------------------------------------------X

**KUNTZ, United States District Judge**

By Superseding Indictment filed June 26, 2012, Defendants Gary Fama ("Fama") and Jack Mannino ("Mannino" or "co-Defendant") are charged with Bank Robbery in violation of 18 U.S.C. §§ 2113(a) and 2113(d), and using and carrying a firearm in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Fama moves *in limine* for this Court to preclude the admission of cell phone tower evidence at trial pursuant to Federal Rule of Evidence 702. For the reasons stated below, the Court denies the motion of Defendant Fama.

## BACKGROUND

At 5:55 p.m. on December 29, 2011, two white males entered the Capital One Bank at 7120 New Utrecht Avenue in Brooklyn, New York. The men ordered everyone in the bank to the ground and forbade anyone to look at them. One of the men was armed with a handgun. The second man jumped over the counter and took approximately $5,658.00 from the tellers' drawers. The two men then fled the Capital One Bank. Compl., at ¶¶ 2–4.

The Government states it intends to introduce business records provided by T-Mobile and Metro PCS pertaining to cellular telephones used by Fama and Mannino on the night of the

charged robbery. Govt. Resp. in Opp'n to Mot. *in Limine* for a *Daubert* Hr'g dated Dec. 6, 2012, Docket # 57 ("Gov't Resp."). The records will reveal that calls to or from the cellular telephones of Fama and Mannino on December 29, 2011 were routed to cell tower sites near: Fama's mother's residence, where Mannino will testify they met before the robbery; the Capital One Bank; and a Marshall's department store, where a person fitting one of the robbers' descriptions reportedly was seen after the robbery. To introduce these historical cellular telephone records, the Government anticipates calling two lay witnesses: a records custodian and/or radio frequency engineer employed by T-Mobile and a records custodian employed by Metro PCS. The Government anticipates these witnesses will testify about how a cellular telephone communicates with a cell tower site and how records stored from those communications tend to indicate the approximate location of a user. The Government also anticipates the witnesses to testify about the types of records maintained by their respective employers, how those records are maintained, and how the particular records in this case were routed on December 29, 2011.

Additionally, the Government expects to call as an expert witness Eduardo Orellana ("Orellana"), a radio frequency engineer employed by Integrated Strategic Resources, Inc., to testify about the field of radio frequency engineering and cell site analysis as a means of determining the approximate location of cellular phones. Gov't's Letter dated Sept. 14, 2012 Regarding Radio Frequency Expert, Docket #25 ("Gov't's Letter"). Specifically, the Government anticipates Orellana to identify the approximate location of Fama's cellular telephone, Mannino's cellular telephone, and Michelle Collazo's cellular telephone based upon their interactions with the T-Mobile and Metro PCS cellular telephone networks. Based on the expert testimony of Orellana, the Government seeks to establish that phone calls allegedly made from Defendant's cellular phone around the time of the robbery can be used to determine the

approximate location of the Defendant when making the calls. Additionally, Orellana would testify as to the underlying technology of the T-Mobile and Metro PCS cellular telephone networks.

Defendant moves to preclude the expert testimony of Orellana on the grounds that it is "not based on any scientific principles and distorts the actual use of cell phones, which is communication, not tracking devices." Def.'s Mot. *in Limine* for a *Daubert* Hr'g dated Dec. 4, 2012, Docket #55 ("Def.'s Mot."). Defendant contends the attempt of the Government to establish the location of a person from the location of a single cell phone tower is based on "junk science" and, therefore, is inadmissible pursuant to Federal Rule of Evidence 702.

## ANALYSIS

**I. Legal Standard**

Under Federal Rule of Evidence 701, opinions or inferences of a lay witness are limited to those: "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Lay witness testimony is limited to matters in which the witness has personal knowledge. Fed. R. Evid. 602.

Federal Rule of Evidence 702 allows the admission of expert testimony if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine the fact in issue." The Supreme Court has stated that Rule 702 requires District Courts to act as gatekeepers to assure that all expert testimony is both reliable and relevant. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). Defendant does not refute that the proposed expert testimony is relevant, but argues the methodology for determining the

location of an individual based on cell phone tower evidence is unreliable. *Daubert* lays out four general criteria for determining the validity of an expert's methodology: (1) whether the theory has been or can be tested or falsified; (2) whether the theory or technique has been subject to peer review and publication; (3) whether there are known or potential rates of error with regards to specific techniques; and (4) whether the theory or approach has general acceptance. 509 U.S. at 593–94. These guidelines are not to be construed as a "definitive checklist." *Id.* at 593. The applicability of any one factor will depend "upon the particular circumstances of the particular case at issue." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999).

**II. Lay Witness Testimony**

Assuming knowledge and helpfulness are satisfied under Rule 701, a lay witness should be able to testify about cell site records only if they do not implicate scientific, technical, or other specialized knowledge. *See Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 81 (3d Cir. 2009) ("When a lay witness has particularized knowledge by virtue of her experience, she may testify—even if the subject matter is specialized or technical—because the testimony is based upon a layperson's personal knowledge rather than on specialized knowledge within the scope of Rule 702."). Courts have admitted lay witness testimony about cell records finding that the custodian's testimony does not reflect expert opinions because it only provides general information on how to interpret cellular phone records and communications with cell tower sites. *See United States v. Baker*, No. 10-cr-4713, 2012 WL 4054773, at n.1 (3d Cir. Sept. 17, 2012) (upholding admission of lay witness testimony regarding operation of cell phone towers and witness's interpretation of cell site records); *United States v. Kale*, 445 F. App'x 482, 485–86 (holding that lay witness's testimony concerning cell phone records and locations of cell phone towers was based on sufficient personal knowledge and was not "scientific, technical, or

specialized" in nature); *United States v. Feliciano*, 300 F. App'x 795, 800–01 (11th Cir. 2008) (holding that police officer's testimony about cell tower sites was admissible as lay witness testimony); *United States v. Henderson*, No. 10-cr-117, 2011 WL 6016477, at *5 (N.D. Okla. Dec. 2, 2011).

The Court finds the testimony the Government seeks to elicit from the T-Mobile and Metro PCS employees with respect to cellular telephone records and cell tower sites is based on personal knowledge and therefore, constitutes lay opinion testimony. The finding of this Court comports with Rule 701. Both witnesses will testify based on their firsthand knowledge. The testimony will be "helpful in resolving issues." Fed. R. Evid. 701, Advisory Comm. Notes. Additionally, the testimony will not implicate scientific, technical, or other specialized knowledge but will reflect common sense reasoning familiar to everyday life with respect to cellular phone records and how they interact with cell tower cites. Notably, the Government states it does not intend to introduce evidence predicting the exact location where Fama and Mannino were at any particular point in time on December 29, 2011. Because the testimony of the T-Mobile and Metro PCS employees constitutes lay witness testimony, a *Daubert* hearing is not required.

### III. The Proposed Expert Testimony Regarding Radio Frequency

Fama asks this Court to preclude the Government's proposed expert testimony of Orellana because it will be "based on junk science and is in fact entirely refuted by valid scientific principles and the prevailing technological industry standards." Def.'s Mot., at 6. The Government counters that several courts have found testimony similar to Orellana's to be reliable under *Daubert* and that many of the concerns raised by Fama go to the weight, rather than the admissibility, of Orellana's testimony. The Court agrees with the Government.

The Government points to several cases in which courts have found expert testimony similar to the one at issue here to be reliable under *Daubert*. Notably, Fama fails to cite any case law in which a court has held this type of cell site analysis to be unreliable. At this point, Fama has not challenged Orellana's qualifications as an expert, but rather attacks the reliability of his methodology. "Numerous federal courts" have found similar testimony reliable and admissible. *United States v. Henderson*, No. 10-cr-117, 2011 WL 6016477, at *5 (N.D. Okla. Dec. 2, 2011) ("[A]lthough Defendant suggests this type of testimony is not reliable, it has been accepted by numerous federal courts . . . .") (citing *United States v. Schaffer*, 439 F. App'x 344, 347 (5th Cir. 2011) ("Testimony established that the field [of historical cell cite analysis] is neither untested nor unestablished.")); *see United States v. Allums*, No. 08-cr-30, 2009 WL 806748, at *2 (D. Utah Mar. 24, 2009) ("The Court finds that the methodology [of using cell cite analysis] utilized by [the expert] is reliable."). This Court finds that the Government has shown by a "preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied." *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007). Therefore, Orellana will be allowed to give his expert testimony.

Fama lists a variety of factors that purportedly can impact the communication of a cellular phone and a particular cellular tower, stating that there is "no evidence presented that the government has even considered these various factors . . . ." Def.'s Mot., at 2–3. The Government correctly points out that these concerns go the weight of Orellana's testimony, not the reliability. *See Allums*, 2009 WL 806748, at *2 (holding that objections similar to Fama's "might cast doubt on [the expert's] conclusions" and would be "appropriately raised on cross-examination," but they would not "override the Court's finding that [the expert's] methodology is reliable under *Daubert*."). The Court finds the proposed testimony to be reliable under

*Daubert* and will not preclude Orellana's expert testimony. Fama's objections concern the weight of Orellana's testimony, and it is the province of the jury to decide what weight, if any, to give such testimony.

The Court is not required to hold an evidentiary hearing regarding the admissibility of expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999) ("The trial court must have the same kind of latitude in deciding *how* to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides *whether or not* that expert's relevant testimony is reliable.") (emphasis in original). During trial, if Fama opts to challenge Orellana's qualifications as an expert, the Court will allow him to do so outside of the presence of the jury.

## IV. Conclusion

The Court finds the testimony of the proposed T-Mobile and Metro PCS employees to constitute lay witness testimony. Additionally, the Court finds the expert testimony anticipated from the Government's expert witness on radio frequency, Mr. Eduardo Orellana, is sufficiently relevant and reliable under *Daubert*. Accordingly, the motion of the Defendant to exclude Orellana's testimony is denied.

**SO ORDERED**

Dated: Brooklyn, New York
December 7, 2012

s/WFK

_____
HON. WILLIAM F. KUNTZ, II
United States District Judge